HUDSON COUNTY CIRCUIT COURT.

ALFRED A. STEIN, RECEIVER OF TERMINAL WARE-
HOUSES, INCORPORATED, (FORMERLY TERMINAL
DEVELOPMENT COMPANY), CLAIMANT-PLAINTIFF, v.
PENNSYLVANIA DOCK & WAREHOUSE COMPANY
ET AL., DEFENDANTS.

———

HUDSON-BUILDERS' MATERIAL CORPORATION, INCOR-
PORATED, A NEW JERSEY CORPORATION, CLAIMANT-
PLAINTIFF, v. COTELLI CONSTRUCTION COMPANY ET
AL., DEFENDANTS.

———

COTELLI CONSTRUCTION COMPANY, CLAIMANT-PLAIN-
TIFF, v. TERMINAL WAREHOUSES, INCORPORATED,
ET AL., DEFENDANTS.

———

HOFFMAN-ELIAS, INCORPORATED, OF NEW JERSEY,
CLAIMANT-PLAINTIFF, v. TERMINAL WAREHOUSES,
INCORPORATED, ET AL., DEFENDANTS.

———

DESLAURIES COLUMN MOULD COMPANY, INCORPORATED,
CLAIMANT-PLAINTIFF, v. COTELLI CONSTRUCTION
COMPANY ET AL., DEFENDANTS.

———

THE W. W. FARRIER COMPANY, A CORPORATION OF NEW
JERSEY, CLAIMANT-PLAINTIFF, v. TERMINAL WARE-
HOUSES, INCORPORATED, ETC., ET AL., DEFENDANTS.

Decided April 13, 1932.

For Alfred A. Stein, receiver of Terminal Warehouses, Incorporated, &c., *Mark A. Sullivan.*

For the claimant-plaintiff Hudson Builders' Material Corporation, Incorporated, *Edwards, Smith & Dawson.*

For the claimant-plaintiff Deslauries Column Mould Company, Incorporated, *Greenberg, Brenner & Weitz* (*Saul Nemser,* of counsel).

For the claimant-plaintiffs Cotelli Construction Company and Hoffman-Elias, Incorporated, of New Jersey, *Joseph Moritz* (*Saul Nemser,* of counsel).

For the claimant-plaintiff W. W. Farrier Company, *Charles E. Hendrickson.*

For the defendant Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee, *McDermott, Enright & Carpenter.*

For the defendants The Associates of the Jersey Company, the United New Jersey Railroad and Canal Company and The Pennsylvania Railroad Company, owners, the Real Estate Land Title and Trust Company of Philadelphia, trustee, and the Pennsylvania Railroad Company, mortgagees, *Wall, Haight, Carey & Hartpence.*

BROWN, C. C. J. This matter is before the court on motions of the defendant owners, other than the Pennsylvania Dock & Warehouse Company, and the defendant mortgagees, to strike out the complaints and to discharge and vacate the liens filed by the plaintiffs on the grounds that "the actions were improvidently and illegally filed and instituted contrary to law." The moving parties also crave oyer of the contract

mentioned in the complaint; the lease referred to therein and the alleged consents of the owners in writing relied upon by the claimants for the erection of the buildings.

Subsequent to the return day of the motions the plaintiffs moved to amend their complaint by alleging an oral contract entered into wherein the defendants consented to the construction of the buildings and waived the conditions of the lease and consents in writing relied upon by the plaintiffs in the original complaint in so far as they provided that no liens were to be impressed upon the lands and buildings.

Following our modern practice copies of the written instruments were furnished in answer to the demand for the reading of those instruments in response to the oyer craved. The motion to amend the complaint was not granted at the time it was made but the plaintiffs were allowed the opportunity of presenting their form of amendment with affidavits to support the allegations therein contained for the purpose of first determining whether the amendments should be allowed. The plaintiff W. W. Farrier Company, filed affidavits to support the motion to amend and those affidavits were relied upon by some of the defendants to support their proposed amendments. The court does not find in the affidavits thus furnished any proof to support the allegations in the proposed amendments but on the contrary affidavits submitted by the defendants clearly prove that the proposed amendments are sham and therefore the motion to amend the complaints will be denied.

There remains for determination the original motions made by the defendants to strike out the original complaints. In order to determine those motions it is necessary to make reference to the pleadings in the case and the circumstances surrounding the litigation.

The suits arise out of the construction of warehouses on the property located at what is known as the Pennsylvania Terminal in the city of Jersey City. The contract was made in September, 1929, in writing, for the construction of those buildings by the Terminal Warehouses, Incorporated,

formerly known as the Terminal Development Company, with the defendant Pennsylvania Dock & Warehouse Company, a corporation of New Jersey, whereby the contracting company agreed to furnish the labor and materials necessary to erect the buildings for the last mentioned company. The complaint and the schedules annexed thereto are to the effect that the contract price for the work and materials was $7,675,270; that extras consisting of alterations and additions resulted in an additional charge of $1,324,732.09, making a total claim of $9,000,002.09. There appears to have been payments made and credits allowed totaling $7,813,592.80, leaving an amount claimed to be due of $1,186,409.29.

The defendants making the motions to strike contend the motions should be allowed for the reasons: (1) that as to the interests of the Pennsylvania Railroad Company, United New Jersey Railroad and Canal Company and The Associates of the Jersey Company, the buildings were not erected with the consent in writing of such owners as required by the Mechanics' Lien law; (2) that the motions should prevail as to all the defendants because the building contract as well as the lease from the Pennsylvania Railroad Company provided that no liens should be filed against the property upon which the buildings were erected.

The fee in the land involved is vested in a corporation known as The Associates of the Jersey Company, which company leased the lands to the United New Jersey Railroad and Canal Company and this lease was thereafter assigned to the Pennsylvania Railroad Company. The Pennsylvania Railroad Company in August, 1929, leased the land described in the complaint to the Pennsylvania Dock & Warehouse Company and The Associates of the Jersey Company and the United New Jersey Railroad and Canal Company consented in writing to this lease and the buildings were erected by the warehouse company as lessee of the Pennsylvania Railroad Company under contracts with the Terminal Warehouses, Incorporated.

The interest and estate in the land of the Pennsylvania

Railroad Company, The Associates of the Jersey Company and the United New Jersey Railroad and Canal Company cannot be subject to a lien in law unless a consent in writing, as provided in the Mechanics' Lien act, is proved. The plaintiffs or claimants rely for those consents upon the provisions of the lease to the warehouse company. This lease as well as all other leases referred to in the pleadings were duly recorded in the county clerk's or register's office where they were required to be recorded by law in order to effect constructive notice to those who might be effected thereby. The lease between the Pennsylvania Railroad Company and the Pennsylvania Dock & Warehouse Company provided for a. rental to be paid as well as other conditions to be performed by the lessee including the provision that—

"The lessee shall pay all costs, expenses and liabilities arising out of or in any way connected with the construction thereof and shall keep the demised premises and structures thereon free and clear from any and all liens of mechanics, or materialmen and all liens of a similar character arising out of or growing out of the construction, repair, alteration or maintenance of such buildings."

The lease made by the United New Jersey Railroad and Canal Company to the Pennsylvania Railroad Company is. dated June 30th, 1871. The lessee in that lease, under date of August 23d, 1929, consented in writing to the making of the lease between the Pennsylvania Railroad Company and the Pennsylvania Dock & Warehouse Company. The lease between The Associates of the Jersey Company and the United New Jersey Railroad and Canal Company was made in February, 1877. The lessee of this lease, did, in the month of August, 1929, consent in writing to. the making of the lease between the Pennsylvania Railroad Company and. the Pennsylvania Dock & Warehouse Company.

The agreement between the Pennsylvania Dock & Warehouse Company and the Terminal Development Company was made on September 1st, 1929. By this agreement the Terminal Development Company agreed to erect and con-

struct the buildings upon the land of the Pennsylvania Railroad Company which is the subject of this litigation. The buildings were to be constructed in three units, known as 1, 2 and 3, according to drawings and specifications. This agreement provides for the contractors to construct the buildings and provide all materials and labor therefor at its own cost and expense. It is provided in paragraph 13 of the agreement that—

"No lien or claim of a contractor shall be filed against the structures or the premises upon which same are to be erected or any part thereof, and no lien or claim of contractors or subcontractors, mechanics, laborers, materialmen or others shall be filed against the structures or the premises on which the same are to be erected or any part thereof."

The plaintiffs in their respective complaints, and on the argument of those motions, rely upon the terms of the lease made by the Pennsylvania Railroad Company to the Pennsylvania Dock & Warehouse Company, as well as the written consents to the making of that lease executed by the other parties interested in the remainder or the leasehold interests of the property upon which the buildings were erected as being the consents in writing required by the Mechanics' Lien law to charge the property with the liens claimed.

Paragraph 7 of the Mechanics' Lien law of 1898, provides:

"If any building be erected by a tenant or other person than the owner of the land, then only the building and the estate of such tenant or other person so erecting such building shall be subject to the lien created by this act and the other provisions thereof, unless such buildings be erected by the consent of the owner of such lands in writing, which writing may be acknowledged or proved and recorded, as deeds are, and when so acknowledged or proved and recorded, the record thereof and copies of the same, duly certified, shall be evidence in like manner."

It thus appears that the statute requires the consent of the owner of the land and the consent of the tenant, if his estate is to be effected, before the land or estate can be made subject

to a lien. The leases upon which the claimants rely as evidence of the alleged consents in writing disclose that those leases particularly provide and are made upon the condition that the lands are not to be subject to any lien claims. It appears beyond question that all of the leases made are leases expressly providing that the lands should not be impressed with liens and such an agreement cannot legally be construed as containing the consents of the landowner or lessor to have their respective estate effected by a lien claim.

It further appears that all of those leases were duly recorded in the offices of the register or county clerk wherein the land is situate thereby furnishing statutory and constructive notice to all of the plaintiffs, including the contractors and subcontractors, that the lands upon which the buildings were to be erected were not to be made subject to liens.

In order for the lien to attach the consent must be given in the manner prescribed by the statute and with the intention of subjecting the land to a lien. The owner of lands who permits a building to be erected by another upon his land has the protection of the statute until he explicitly consents in writing to have the land become subject to a lien and the law exempts the land from a lien until that consent is given. *The Associates of the Jersey Co.* v. *Davison*, 29 *N. J. L.* 415. Even though permission is given by the owner or tenant to construct buildings upon the land at the cost and expense of the builder, as was done in the instant cases, such permission has been construed as not being the full consent required by the Mechanics' Lien law, in order to impress a lien upon the land.

As state in the case of *Hervey* v. *Gay*, 42 *N. J. L.* 168 (at *p.* 176):

"It will be observed that both the lease and the subsequent paper contain the qualification that the repairs shall be at the cost and expense of the tenants.

"The written consent which, under the lien law, will bind the land of the owner for repairs contracted for by the tenant, must be absolute in its terms. If the writing giving per-

mission to the tenant to repair contain a clause that the same shall be done without any expense to the owner, but at the cost of the tenant, it is not the consent contemplated by the eighth section of the Mechanics' Lien law. Such qualification is inconsistent with consent to encumber the land of the owner for another's indebtedness.

"The plaintiffs in this suit invoke the lease and subsequent writing to make the land liable. They cannot claim rights under part of those instruments and reject the remainder. The clauses which provide that repairs shall be at the cost and expense of the tenant must be construed in connection with the other provisions of the writings.

"Where the paper relied upon as a consent of the owner to the making of repairs by another person contains a proviso that the repairs shall not be at the expense of the owner, it is not consent within the meaning of the eighth section of the Mechanics' Lien law."

No particular form of words are necessary to effect a lien; but, nevertheless, the statutory requirements must be fulfilled and it must be clearly shown that the owner intended that his land should be subjected to a possible lien for work contemplated.

It appears in the cases under consideration that not only the contractor but the subcontractor had notice of the provisions of the leases referred to protecting the lands in question from building liens. When a contractor and subcontractor know that a building contract under which they propose to accept employment contains a provision that no liens shall be asserted, the mere acceptance of such employment will bar them from asserting liens in opposition to such provision. *Bates Machine Co.* v. *Trenton, &c., Co.*, 70 *N. J. L.* 684; 58 *Atl. Rep.* 935.

The plaintiff W. W. Farrier Company contends that its lien should attach because specifications were not filed for one of the units that were to be constructed. The court does not see that this omission, if it did exist, effects the legal status of this plaintiff as to its lien claim because this plaintiff accepted

its employment with full knowledge, or at least constructive knowledge, of the limitations contained in the leases precluding the imposition of mechanics' liens upon the lands whereon the buildings were constructed. This plaintiff as well as the other plaintiffs are precluded, because of those provisions in the leases, from filing their liens and bringing suit thereon.

The motions of the defendants to strike out the complaints and vacate the lien claims filed will be granted and an order may be entered to that effect. This determination, of course, does not effect the right of the subcontractors to sue the general contractor and obtain, if they are entitled thereto, a general judgment against the general contractor.